THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | |
|---|---|
| **RICHARD RADER, BRADLEY SNYDER,**<br>**ROBERT CLEMENS & STEVEN HOLLOWAY**<br><br>    Plaintiffs,<br><br>    v.<br><br>**DENSO MANUFACTURING TENNESSEE, INC.**<br><br>    Defendant. | Case No.<br><br>Judge<br>Magistrate |

## COMPLAINT

Plaintiffs Richard Rader, Bradley Snyder, Robert Clemens, and Steven Holloway (collectively "Plaintiffs") file this action against Defendant Denso Manufacturing Tennessee, Inc. ("Defendant" or "Denso") for violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et. seq.* Defendant discriminated against Plaintiffs because of their age in elimination of positions, demotions, reduction of hourly rates, removal of supervisory titles and managerial status, non-selection, denial of training and other terms, conditions, and privileges of employment because their age. Defendant's policies, practices and procedures limited, segregated, and/or classified Plaintiffs, and similarly situated employees over the age of 60 years of age, in a manner depriving and/or tending to deprive them of employment opportunities and otherwise adversely impacting their status as an employee.

## PARTIES

1.  Defendant Denso Manufacturing Tennessee, Inc. ("Denso") is a domestic for-profit corporation registered with the State of Tennessee.

2. Denso's registered agent address is corporation service company 2908 Poston Avenue Nashville, TN 372013-1312.

3. Denso's principal address is 2400 Denso Drive Athens Tennessee.

4. Denso's primary mailing address is 1720 Robert C. Jackson Drive Maryville, Tennessee 37801.

5. Plaintiff Richard Rader ("Plaintiff Rader") is a resident of Blount County.

6. Plaintiff Bradley Snyder ("Plaintiff Snyder") is a resident of Blount County.

7. Plaintiff Robert Clemens ("Plaintiff Clemens") is a resident of Blount County.

8. Plaintiff Steven Holloway ("Plaintiff Holloway") is a resident of Blount County.

## JURISDICTION AND VENUE

9. On May 6, 2021, Plaintiff Rader filed a charge of discrimination with the Equal Employment Opportunity Commission. [**Attachment 1**].

10. The EEOC issued Plaintiff Rader a right-to-sue letter on August 11, 2022. [**Attachment 2**].

11. On May 6, 2021, Plaintiff Snyder filed a charge of discrimination with the Equal Employment Opportunity Commission. [**Attachment 3**].

12. The EEOC issued Plaintiff Snyder a right-to-sue letter on August 11, 2022. [**Attachment 4**].

13. On May 6, 2021, Plaintiff Clemens filed a charge of discrimination with the Equal Employment Opportunity Commission. [**Attachment 5**].

14. The EEOC issued Plaintiff Clemens a right-to-sue letter on August 11, 2022. [**Attachment 6**].

15. On May 6, 2021, Plaintiff Holloway filed a charge of discrimination with the Equal Employment Opportunity Commission. [**Attachment 7**].

16. The EEOC issued Plaintiff Holloway a right-to-sue letter on August 11, 2022. [**Attachment 8**].

17. Plaintiffs has satisfied the administrative exhaustion requirements under the ADEA.

18. At all times relevant to this action Defendant was an employer as defined under the Act. 29 U.S.C. § 630(b).

19. At all times relevant to this Action each Plaintiff was an employee of Defendant as defined under the Act. 9 U.S.C.S. § 630(f).

<u>**FACTS**</u>

20. Denso is an automotive parts manufacturer that employees 2,000 full-time associates at its Maryville, Tennessee manufacturing facilities ("Maryville Facility").

21. The Maryville facility is Denso's largest U.S. manufacturing facility.

22. Historically, Denso has had three levels of supervision on the production floor at Maryville Facility:

    a. Section Leader,

    b. Team Leader, and

    c. Group Leader,

23. In early 2020, Denso undertook a review of its operation known as "Healthy Organization."

24. Denso claimed the review determined there were too many levels of management.

25. Denso eliminated the Group Leader position.

26. Denso distributed a form titled *DMTN Management Structure Change Production Group Leader (GL) Job Reclassification Sheet* ("*GL Reclassification Form*").

27. Denso's *GL Reclassification Form* states it is creating a consistent management structure across North America in the operations area:

3

     a.  President,

     b.  Vice President,

     c.  Director,

     d.  Senior Manager,

     e.  Manger,

     f.  Section Leader, and

     g.  Team Leader.

28. Denso transitioned incumbent Group Leaders into either the:

     a.  Team Leader,

     b.  Production Expert, or

     c.  Production Associate.

29. Denso claims nearly all the Group Leader job responsibilities were supposedly given to the Team Leader position.

30. Denso claims to employ a selection process, that included 2 gateway disqualifiers:

     a.  Active discipline; or

     b.  Overall rating of 2 or below on their performance

31. Denso claims it utilized a scoring methodology titled "9-Box" which it characterizes as "individualized assessment completed by the Group Leader's Chain of Command" to evaluate candidates for Team Leader positions.

32. Denso claims it disqualified all Group Leaders from consideration for a Team Leader position if they were scored/classified as "1C" in the 9-Box Score.

33. Denso's position statement to the EEOC provides:

> If the Group Leader met the minimum criteria (no active discipline, met expectations on performance review, and not classified as a 1C on the 9-Box score), then DMTN made an individualized evaluation of each Group Leader's 9-Box score to determine whether the Group Leader was ready to successfully move into a Team Leader role. For a Group Leader who was not yet qualified to be a Team Leader, DMTN considered whether there was an open Team Leader position that met the employee's shift preference within his division or company. If so, then the Group Leader was reclassified to a Team Leader in Training role and placed into the open Team Leader position. If not, then the Group Leader was reclassified into a Production Expert or Associate role.

34. Denso's position statement to the EEOC provides:

> For a Group Leader who was considered ready and qualified to be a Team Leader, DMTN considered whether there was an open Team Leader position that met the employee's shift preference. If so, then the Group Leader was reclassified to a Team Leader role and placed into the open Team Leader Position. If not, then the Group Leader was reclassified to Team Leader (Z Position) and waited for a future Team Leader opening.

35. Denso did not submit any of the 9-Box Scores for the Plaintiffs to the EEOC.

36. Denso did not inform the EEOC that any of the Plaintiffs were disqualified because of their 9-Box Score.

37. Denso did not provide the EEOC or Mr. Rader with Mr. Rader's 9-Box Score.

38. Denso did not provide the EEOC or Mr. Snyder with Mr. Snyder's 9-Box Score.

39. Denso did not provide the EEOC or Mr. Clemens with Mr. Clemens' 9-Box Score.

40. Denso did not provide the EEOC or Mr. Holloway with Mr. Holloway's 9-Box Score.

41. Denso circulated a document titled *We Want to Help You Reach Your Career Goals* and it included the following for Team Leader:



| Team Leader |
|---|
| ...ics Associates |
| Company-wide Movement |
| densocareers.com, Posted for 5 working days, Apply: online at densocareers.com (be sure to enable email notifications) |
| • Providing front line leadership to production lines by monitoring their teams' processes hour by hour, coaching and training associates.<br>• Performing administrative tasks such as achieving daily schedule, following standardized work, maintaining the kaizen plan, utilizing 5M change control, controlling abnormal situations and ensuring company rule compliance. |
| 1) 1 year at DENSO **or** 2 years past mgmt experience<br>2) No active disciplines<br>3) Complete online course "Is Leadership for You?" |
| 1 year (per NA Exempt Policy) |
| Annual salary |
| Straight time after 80 hours |
| Salary range (no step structure) |
| Annual merit increase based on performance score |

42. Denso's document titled *We Want to Help You Reach Your Career Goals* provided:



| Team Leaders | | DIVISION | | | | | |
|---|---|---|---|---|---|---|---|
| | | BE (203) | EC (30X) | EP (202) | ES (101) | IC (201) | IS (204) |
| SHIFT | 1 | 0 | 0 | 3 | 0 | 0 | 0 |
| | 2 | 2 | 3 | 10 | 3 | 10 | 2 |
| | 3 | 2 | 0 | 1 | 1 | 0 | 1 |
| Note: 19 more positions to be filled outside of DENSO | | | | | | | |

43. Denso circulated a document titled *Denso Manufacturing Tennessee, Inc. Healthy Organization* document that stated the following:



## How will this impact DMTN's management structure?

**This activity will impact both office (indirect) and plant (direct) groups.**

**For office (indirect) groups:**
- No Section Leaders in new structure
- Individual contributors will report directly to our managers.

**For plant (direct) groups:**
- No Group Leaders in new structure
- Associates will report directly to our Team Leaders who will be our new front line leaders with multiple responsibility areas.
- Expert and maintenance planner positions will be added to support production lines.

← **What's Next?** →

- Over the next few weeks, DMTN will have 100+ Expert positions and 50+ Team Leader positions which will be filled both internally and outside of DENSO.
- Associates who have career goals of moving into either of these positions should apply and go through the interview process for these job opportunities.
- Starting November 18:
  - Team Leader positions will be posted via densocareers.com website.
  - Expert and maintenance planner positions will be posted via our internal posting process.

44. The Group Leader technical responsibilities were assigned to *Process Experts* or *Production Experts*.

45. *Denso's GL Reclassification Form* states

New roles will be determined by the individual's qualifications for the role (skillsets, experience and performance). Group Leaders who are on an active discipline or received a 2 on their FY19 PMP review will not be considered for the TL role. Group Leaders who are on an active discipline or received a 2 on their FY19 PMP may not be considered for the PEX role. These situations will be handled on a case by case basis depending on the type of discipline and identified areas of opportunity on the PMP. Leaders who are placed into a Team Leader role will be frozen for 1year for lateral moves. Group Leaders who are placed into an PEX role will be frozen for 1 year for lateral moves and 3 months for job opportunities. Group Leaders who are placed into an associate role will not be personally frozen but assume the frozen status of the assigned department

46. *Denso's GL Reclassification Form* states

**Team Leader Compensation:** Base pay increase of 10%. Position is exempt (salaried) and overtime rules are standard straight time (1.0x after 40)

47. *Denso's GL Reclassification Form* states

**Production Expert Compensation:** Associates below current PEX top rate ($21.12) will move over lateral in base pay. Associates above top rate will move to $21.12 and receive additional lump sum based on current rate. Example if current $23/hr: $1.88 (diff of current and new) x 520 hours (3 months) = $977.60 (lump sum). PEX position is nonexempt (hourly) and regular overtime rules apply (1.5x after 40 and 2.0x on Sunday/Holiday). Lump sum will be given when GL is reclassified into new job title.

48. *Denso's GL Reclassification Form* states

**Production Associate Compensation:** Associates above top rate will move to $20.02 and receive additional lump sum based on current rate. Example if current $23/hr: $2.98 (diff of current and new) x 520 hours (3 months) = $1,549.60 (lump sum). Production associate position is nonexempt (hourly) and overtime rates will continue to apply (1.5x after 40 and 2.0x on Sunday/Holiday). Lump sum will be given when GL is reclassified into new job title.

49. Rader was born in 1955.

50. Rader began his employment with Denso in September of 1998.

51. In 2020, Rader's Section Leader was Chuck Fiegley.

52. Chuck Fiegley is a current employee of Denso.

53. In 2020, Chuck Fiegley asked Rader about retirement.

54. In 2020, Chuck Fiegley asked Rader how much longer Rader planned on working.

55. In 2020, Denso compensated Rader as Group Leader $24.74 per hour.

56. On August 19, 2020, Plaintiff Rader completed the *Production Group Leader (GL) Job Reclassification Sheet*, indicating that he did want to be considered for reclassification as a Team Leader on multiple shifts.

57. Plaintiff ranked his shift preference:

    a.  First Choice: 2nd Shift

    b.  Second Choice: 1st Shift

    c.  Third Choice: 3rd Shift

58. On August 24, 2020, due to a surplus in the Parts, Drive, Shaft ("PDS") Department, Mr. Rader was temporarily moved from the PDS Group Leader position to a 2nd Shift Group Leader position in the Parts Die Casting ("PDC") Department.

59. 2nd Shift was 2:30PM to 11:00PM.

60. Chuck Fiegley instructed Mr. Rader to complete a second *GL Job Reclassification Sheet*.

61. Before Mr. Rader completed the form, Chuck Fiegley informed Mr. Rader that he would not be considered for a Team Leader Position.

62. Mr. Rader did ask Mr. Fiegley if he had been considered for the promotion.

63. Mr. Fiegley said Mr. Rader had been considered for team leader in training, but he had to have a working team for this promotion to take place.

64. Mr. Rader was denied the Team Leader in Training Position because he was on temporary assignment.

65. On September 28, 2020, Mr. Rader completed a new *GL Job Reclassification Sheet*.

66. Mr. Rader indicated that he was interested in being considered for a Production Expert ("PEX") position.

67. Mr. Rader ranked his shift preference:

    a. First Choice: 2nd Shift

    b. Second Choice: 1st Shift

    c. Third Choice: 3rd Shift

68. As a result, Plaintiff Rader was reclassified as a Production Expert ("PEX") in the PDC department on September 28, 2020.

69. Denso continued to ask Plaintiff Rader to supervise and manages process associates.

70. The change was made permanent, effective December 7, 2020.

71. On December 7, 2020, Mr. Rader's new rate was $21.39 per hour.

72. Denso demoted Plaintiff Rader from a Group Leader position to a PEX position.

73. Plaintiff Rader suffered a reduction in his regular base rate, a reduction in his shift differential rate, and a reduction in his overtime rate,

74. Plaintiff Rader continued to provide front line leadership to production lines.

75. Plaintiff Rader lost the pay and title consistent with a supervisory role.

76. Denso continued to ask Plaintiff Rader to supervise and manage process associates while he was designated as PEX.

77. Denso did not offer the online course "Is Leadership for You?" to Plaintiff Rader, a long-standing Group Leader.

78. Denso's requirement that candidates for Team Leader complete the "Is Leadership for You?" online course is a facially neutral requirement that has a disparate impact on Plaintiff Rader and similarly situated employees over the age of 40.

79. Denso continued to select individuals for 50 open Team Leader positions after Plaintiff Snyder was designated a *PEX*.

80. Denso posted a Team Leader position on the internet, increasing the relevant hiring pool, and so this facially neutral decision had a disparate impact on Plaintiff Rader and similarly situated employees over the age of 40.

81. Denso limited Plaintiff Rader's opportunities for training by placing him on temporary assignment, without team members, and pressuring him to re-submit a second *GL Job Reclassification Sheet* by claiming there were no vacancies for him.

82. By asserting there were no Team Leader vacancies available, Plaintiff Rader was left to select either a Production Associate position [lowest pay] or PEX [second lowest pay] position.

83. By posting the Team Leader applicant pool to external applicants, Denso protracted the selection process for those vacancies, leaving captive GLs the only option of returning to the process associates' role or selecting the newly minted PEX positions (limited to internal candidates only).

84. Denso policy limits GLs by stating, "Group Leaders who are placed into an PEX role will be frozen 1 year from lateral moves and 3 months job opportunities."

85. The combination of Denso's facially neutral policies and practices caused a disparate impact on GLs over the age of 40 years of age as they "selected" PEX versus dropping back to associate level.

86. Denso continued to maintain Team Leader vacancies despite Plaintiff Rader's expressed interest, qualifications, and willingness to enter training.

87. Denso selected individuals substantially younger than Mr. Rader to fill *Team Leader in Training* positions with no team.

88. Denso selected individuals substantially younger than Mr. Rader to fill *Team Leader* positions.

89. Upon information and belief Denso filled positions with applicants outside of Denso, despite Plaintiff Rader's qualifications for a Team Leader In Training and/or Team Lead positions.

90. Upon information and belief Plaintiff Snyder lost other categories of compensation and opportunities for career advancement by being demoted and not selected for a Team Leader In Training or Team Leader position.

## PLAINTIFF SNYDER

91. Plaintiff Snyder started his employment with Denso in September of 1997.

92. Denso employed Plaintiff Snyder as a Group Leader.

93. As a *Group Leader* in 2020, Denso compensated Plaintiff Snyder at an hourly rate of $24.25 per hour with a 5% shift differential.

94. In 2020, Denso announced the Healthy Organization initiative that eliminated the Group Leader role.

95. In 2020, Denso employed Plaintiff Snyder as a Group Leader until he was reclassified

96. Denso eliminated Plaintiff Snyder's Group Lead position.

97. Before the Healthy Organization, the Slip Ring ("CSR") Department Team Leader Wade Parker had three Group Leaders:

    a. Mr. Snyder,

    b. Robert Clemens, and

    c. Scott Laugherty.

98. In September 2020, Mike Cowans, the *Section Leader*, instructed Mr. Snyder to complete the GL Reclassification Form.

99. Snyder requested consideration for the *Team Leader* Position.

100. Mr. Snyder ranked his shift preference:

    a. First Choice: 2nd Shift

    b. Second Choice: 1st Shift

    c. Third Choice: 3rd Shift

101. Denso claims that due to downsizing in the CSR department, there was no need for an additional CSR Team Leader.

102. Denso claims there was not another *Team Leader* role available for Mr. Snyder.

103. As a result, Plaintiff Snyder was reclassified as Production Expert ("PEX").

104. Plaintiff's Snyder regular hourly rate as PEX was less than his regular hourly rate as a Group Leader.

105. Denso demoted Plaintiff Snyder from a Group Leader position to a PEX position.

106. The change from Group Leader position to a PEX position reduced Plaintiff Snyder's regular hourly rate.

107. The change from Group Leader position to a PEX position reduced Plaintiff Snyder's shift differential rate.

108.    The change from Group Leader position to a PEX position reduced Plaintiff Snyder's overtime hourly rate.

109.    As a PEX, Plaintiff Snyder continued to provide front line leadership to production lines.

110.    Plaintiff Snyder lost the pay and title consistent with a supervisory role.

111.    Denso continued to ask Plaintiff Snyder to supervise and manage process associates while he was designated as PEX.

112.    Denso did not offer the online course "Is Leadership for You?" to Plaintiff Snyder, a long-standing Group Leader.

113.    Denso's requirement that candidates for Team Leader complete the "Is Leadership for You?" online course is a facially neutral requirement that has a disparate impact on Plaintiff Snyder and similarly situated employees over the age of 40.

114.    Denso continued to select individuals for 50 open Team Leader positions after Plaintiff Snyder was designated a *PEX*.

115.    Denso posted Team Leader position on the internet, increasing the relevant hiring pool, and so this facially neutral decision had a disparate impact on Plaintiff Snyder and similarly situated employees over the age of 40.

116.    By posting the Team Leader applicant pool to external applicants, Denso protracted the selection process for those vacancies, leaving captive GLs the only option of returning to the process associates' role or selecting the newly minted PEX positions (limited to internal candidates only).

117.    Mr. Snyder attempt to speak with members of Denso's *Associate Relations Department* to get a job description outlining his job duties and responsibilities.

118.    On October 30, 2022, Wade Parker sent an e-mail stating:

> I and Mike Have both told you your Job and responsibilities have not changed other than the Associate managing side. From what I understand this was a cooperate decision to eliminate the G/L position so there is still allot of things to work thru from the top down may take some time . This has affected allot of people .
> You are still to sign off on the check sheets as normal, collect and distribute check sheets at the end of the month, do the mms submit scrap tickets daily , continue to ensure that Rotor Lines have the product they need, handle sorting and containing any Quality issues that come up, ensure that your teams have what the need to do their jobs, Make sure Safety issues are addressed, and Help Maintain good 5S in your departments. and If there is something that comes up that you are not doing that Needs to be done I assure you that I will let you know . I hope this gives you a little better understanding of your Role, As this position evolves I'm sure there will be some changes and we will work threw them as they come up...

119.    On February 5, 2021, Wade Parker Sent the following e-mail:

| | |
|---|---|
| From: | Wade Parker |
| Sent: | Friday, February 5, 2021 7:17 AM |
| To: | Robert Clemens; Brad Snyder |
| Subject: | Yearly training in oracle |

> Guys Pleas help your teammates get logged in and do their yearly refresh training and don't forget yours need to be completed by end of month.

120.    In March 2021, Section Leader Terry Miller included Brad Snyder on e-mails that primarily listed Team Leaders as recipients.

121.    On March 12, 2021, Section Leader Terry Miller sent an e-mail that listed Brad Snyder as an addressee stating:

> I appreciate the job each of you are doing every day and I'm truly impressed at the great progress you are making since your promotion to TL!

122.    On May 14, 2021, Section Leader Jamey Patterson sent an e-mail stating:

> TL's, as many of you are aware we have been trying to come up with an easy way for you all to communicate your manpower needs across the Division so we can help each other be successful. After much discussion in our SL group and asking for input from most of you we have something we want to try.

123.    Patterson's May 14, 2021, e-mail address section provides:

| From: | Jamey Patterson |
|---|---|
| Sent: | Friday, May 14, 2021 1:22 PM |
| To: | Cameron Miller; Ralph Miller; Steve Sturdivant; Steve Kesterson; Darrell Hill; Doyle Simerly; Wade Parker; Richard Simerly; Tim Denton; Tommy Houser; John Marsh; Tim Sheets; Daniel Ordway; Jason Flatt; Troy Stayley; Tim Kitts; Tim Ottinger; Tony Breeden; Mike Alley; Mike Clark; Chad Brown; Tim Purdy; George Aguilar; Devin Macklin; Ed Durose; Eli Haun; Chris Allen; Billy Palmer; Brad Funk; Jeffery Montgomery; Whitney Neal; Charles Tillett; Thomas Walczyk; Brian Townson; Ronald Wilson; Tina Huffstetler; Andrew Wright; Sam Estes; Jeremy Davis; Brad Snyder; Manuel Cuevas-Sanchez; Brian Baird; Randy Millward; Ben Widner; Josue Jimenez; James Peacock; Christopher Collins; Edwin Senu; David Dorsey; Dewayne Garrett; David Richardson; Dennis Putt; Nathanial Hill; Samuel Robinson; Aaron West; Laura Jones; Steven Ford; Jay Bell; Cameron Kerr; Robert Monn; Devin McGill; Christian Hackney; Robert Clemens; Shawn Jones; Justin Swayney; John Mull; Todd Morse; Jacob Fiegle; Chris Springer; William Plaster; Andrew Roberts; Brian Pearson; Christopher Kile |
| Cc: | Jerry Hamilton; Mike Cowan; Kelly Cotter; Jason Conaster; Mike Miller; Chuck Feigley; Andy Hancox; Terry Miller; Bobby Rimmer; Michael Kris Blevins; Kim Fannin; Jason Titlow; Michael Beddingfield; Corey Burnett; Jeff Russell; Shane White; Dave Hulette; Joe Brock; Gary Hayes; Bob Slaughter; Stanley Simmons; David Smith; Joel Creel |
| Subject: | Manpower Request Channel |

124. On June 4, 2021 Roger Liner send an e-mail Titled "FW:Scrap -Top 10" telling the recipients "Please discuss with your associates and gain their ownership over this condition."

| From: | Roger Liner |
|---|---|
| Sent: | Friday, June 4, 2021 2:24 PM |
| To: | Wade Parker; Scott Laugherty; Robert Clemens; Brad Snyder |
| Cc: | Mike Cowan |

125. On June 18, 2021 8:45 PM Tina Huffstetler wrote an e-mail CAS-2 wrote an e-mail to

| From: | Tina Huffstetler |
|---|---|
| Sent: | Friday, June 18, 2021 8:45 PM |
| To: | Christian Hackney; Robert Clemens; Justin Swayney; Jacob Fiegle |
| Subject: | CAS2 |

126. On July 20 2021, Section Leader Terry Miller wrote an e-mail stating:

Thanks Jay.
Concerning your associate's request: We don't really have a lot of lines running on 3rd shift. The 4 gentlemen listed on the CC above are TLs and have lines running on 3rd shift. I don't know that they need help, but you can reach out to them to find out.

127. The address of section of Terry Miller' July 20 2021, e-mail:

| From: | Terry Miller |
|---|---|
| Sent: | Tuesday, July 20, 2021 7:24 PM |
| To: | Jay Bell |
| Cc: | Steve Sturdivant; Robert Clemens; Christian Hackney; Justin Swayney |
| Subject: | Re: EHV-Toyota Absent 7-20-21 |

128.	Denso policy limits "Group Leader who are placed into an PEX role will be frozen 1 year from lateral moves and 3 months job opportunities."

129.	The combination of Denso's facially neutral policies and practices caused a disparate impact on GLs over the age of 40 years of age as they "selected" PEX versus dropping back to associate level.

130.	Denso continued to maintain Team Leader vacancies despite Plaintiff Snyder's expressed interest, qualifications, and willingness to enter training.

131.	Denso selected individuals substantially younger than Plaintiff Snyder to fill *Team Leader in Training* positions with no team.

132.	Denso selected individuals substantially younger than Plaintiff Snyder to fill *Team Leader* positions.

133.	Upon information and belief Denso filled positions with applicants outside of Denso, despite Plaintiff Snyder's qualifications for a Team Leader In Training and/or Team Lead positions.

134.	Upon information and belief Plaintiff Snyder lost other categories of compensation and opportunities for career advancement by being demoted and not selected for a Team Leader In Training or Team Leader position.

135.	In 2020 Denso selected individuals substantially younger than Mr. Snyder to *Team Leader In Training* positions.

136.	In 2020 Denso selected individuals substantially younger than Mr. Snyder to *Team Leader* positions.

### PLAINTIFF CLEMENS

137.	Plaintiff Clemens has been employed by Denso since July 1992.

138.    Denso employed Plaintiff Clemens as a Group Leader.

139.    As a Group Leader in 2020 Denso compensated Plaintiff Clemens at an hourly rate of
        $25.89 per hour with a INSERT% shift differential.

140.    In 2020, Denso employed Plaintiff Clemens as a Group Leader in the Slip Ring ("CSR")
        Department.

141.    In 2020, Denso announced the Healthy Organization initiative that eliminated the Group
        Leader role.

142.    In 2020, Denso employed Plaintiff Clemens as a Group Leader until he was reclassified.

143.    Denso eliminated Plaintiff Clemens's Group Leader position.

144.    In November 2020 Plaintiff Clemens was reclassified as *Production Expert* ("PEX").

145.    As a *Production Technician* Plaintiff Clemens's regular rate of pay was $22.89 per hour.

146.    Denso claimed in its position statement to the EEOC that there was not a Team Leader
        role available for Plaintiff Clemens.

147.    Denso demoted Plaintiff Clemens from a Group Leader position to PEX position.

148.    Plaintiff Clemens suffered a reduction in his regular base rate, a reduction in his shift
        differential rate, and a reduction in his overtime rate.

149.    Plaintiff Clemens continued to provide front line leadership to production lines.

150.    Plaintiff Clemens lost the pay and title consistent with a supervisory role.

151.    Denso continued to ask Plaintiff Clemens to supervise and manage process associates
        while he was designated as PEX.

152.    Denso did not offer the online course "Is Leadership for You?" to Plaintiff Clemens, a
        long-standing Group Leader.

153. Denso's requirement that candidates for Team Leader complete the "Is Leadership for You?" online course is a facially neutral requirement that has a disparate impact on Plaintiff Clemens and similarly situated employees over the age of 40.

154. Denso continued to select individuals for 50 open Team Leader positions after Plaintiff Clemens was designated a *PEX*.

155. Denso posted Team Leader position on the internet increasing the relevant hiring pool, this facially neutral decision had a disparate impact on Plaintiff Clemens and similarly situated employees over the age of 40.

156. By posting the Team Leader applicant pool to external applicants Denso protracted the selection process for those vacancies, leaving captive GLs the only option of returning to the process associates' role or selecting the newly minted PEX positions (limited to internal candidates only).

157. In 2021, members of Denso's management included Plaintiff Clemens on e-mails directing him to continue performing first-line supervisor responsibilities.

158. In 2021, members of Denso's management included Plaintiff Clemens on e-mails directing the recipients to perform the same tasks, and the recipients were predominantly Team Leaders.

### PLAINTIFF HOLLOWAY

159. Plaintiff Holloway has been employed by Denso since 2012.

160. Denso employed Plaintiff Holloway as a Group Leader.

161. As a Group Leader in 2020 Denso compensated Plaintiff Holloway at an hourly rate of $24.00 per hour with a 5% shift differential.

162.    In 2020, Denso employed Plaintiff Holloway as a Group Leader in the Slip Ring ("CSR") Department.

163.    In 2020, Denso announced the Healthy Organization initiative that eliminated the Group Leader role.

164.    In 2020, Denso employed Plaintiff Holloway as a Group Leader until he was reclassified.

165.    Denso eliminated Plaintiff Holloway's Group Leader position.

166.    Plaintiff Holloway received an overall rating of 2.09 in his 2019 Annual Performance Review.

167.    Defendant asserts in its position statement to the EEOC that Plaintiff Holloway's rating automatically made him ineligible to be considered for a Team Leader position.

168.    Denso demoted Plaintiff Holloway from Group Leader to production associate position.

169.    The change from Group Leader position to a production associate position reduced Plaintiff Holloway's regular hourly rate.

170.    The change from Group Leader position to a production associate reduced Plaintiff Holloway's shift differential rate.

171.    The change from Group Leader position to a production associate reduced Plaintiff Holloway's overtime hourly rate.

172.    Plaintiff Holloway lost the pay and title consistent with a supervisory role.

173.    Denso did not offer the online course "Is Leadership for You?" to Plaintiff Holloway, a long-standing Group Leader.

174.    Denso's requirement that candidates for Team Leader complete the "Is Leadership for You?" online course is a facially neutral requirement that has a disparate impact on Plaintiff Snyder and similarly situated employees over the age of 40.

175. Denso continued to select individuals for Team Leader, Team Leader in Training and PEX positions.

176. Denso posted the Team Leader position on the internet, increasing the relevant hiring pool, and so this facially neutral decision had a disparate impact on Plaintiff Snyder and similarly situated employees over the age of 40.

177. By posting the Team Leader applicant pool to external applicants Denso protracted the selection process for those vacancies, leaving captive GLs fear returning to the process associates' role or selecting the newly minted PEX positions (limited to internal candidates only).

## CAUSES OF ACTION

## DISPARATE TREATMENT IN VIOLATION OF 29 U.S.C. §623(A)

178. Plaintiffs re-allege and incorporate by reference paragraph nos. 1-177 with the same force and affect as if fully set forth herein.

179. At all times material to this action Plaintiffs were over 40 years of age.

180. Plaintiffs were demoted from their supervisory and managerial positions.

181. Individuals younger than Plaintiffs were treated more favorably than Plaintiffs in their reassignment.

182. Plaintiffs met the minimum written qualifications for the Team Leader position.

183. Plaintiffs had experience performing the written job responsibilities of the Team Leader position.

184. Plaintiffs applied for Team Leader positions.

185. Plaintiffs satisfied Defendant's objective qualifications for Team Leader positions.

186. Plaintiffs were qualified for Team Leader positions.

187.    Plaintiffs were qualified for Team Leader in Training positions.

188.    Despite their qualifications, Plaintiffs were not selected for Team Leader positions.

189.    Defendants continued to selected individuals younger than Plaintiffs for Team Positions after Defendant placed Plaintiffs in positions other than team leaders.

190.    Defendant selected younger individuals whose qualifications were comparable or lesser than Plaintiffs after it rejected Plaintiffs for Team Lead and Team Leader in training positions.

191.    Plaintiffs were not selected for Team Leader positions.

192.    Plaintiffs were not selected for Team Leader in Training positions.

193.    Defendant selected individuals younger than Plaintiffs for Team Leader positions.

194.    Defendant selected individuals younger than Plaintiffs for Team Leader in Training positions.

195.    Plaintiffs suffered loss of prestige by loss of supervisory title.

196.    Plaintiffs lost managerial status.

197.    Plaintiffs suffered a reduction of their base hourly rate.

198.    Plaintiffs suffered a reduction in pay.

199.    Plaintiffs suffered other financial loss, including reduced retirement contributions, and matching for retirement.

200.    Defendant's proffered reason for eliminating the Group Leader position to increase efficiency is pretext for discrimination.

201.    Plaintiffs continued to perform supervisory and managerial responsibilities that they performed as Group Leaders when they were move to PEX positions.

202.    Plaintiffs performed supervisory and managerial responsibilities without a managerial or supervisory status, title, or pay.

203.    Defendant reassigned Plaintiffs to non-supervisory positions, which was an adverse employment action

204.    Defendant did not select Plaintiffs for Team Leader in Training, constituting a denial of training opportunities for advancement.

205.    Defendant's decision not to select Plaintiffs for Team Leader in Training is an adverse employment action.

206.    Defendant's claims that there were no Team Leader positions or a need for Team Leaders on Plaintiff's preferred shifts are false and pretext for discrimination.

207.    Defendant's placement and assignment of Plaintiffs into non-supervisory and non-managerial status positions was pretext to discriminatory reduction in pay.

208.    Defendant did not disclose the use of 9-Box assessment to employees when announcing the restructuring.

209.    Defendant's 9-Box assessment consists of subjective evaluations of the candidates' qualifications.

210.    Defendant's proffered reason for not selecting Plaintiffs for a Team Leader Position is pretext for discrimination.

211.    Defendant's proffered reason for not selecting Plaintiffs for a Team Leader in Training Position is pretext for discrimination.

212.    Defendant's claims that Defendant reduced Plaintiffs hourly rates because they were no longer performing supervisory or managerial work has no basis in fact, did not actually motivate the reduction in pay, and is insufficient to warrant the reduction in pay.

213.    Defendants claims that Plaintiffs were not selected for Team Leader positions because there were no available positions or need for multiple team leaders has no basis in fact, did not actually motivate the denial of the job title.

214.    Defendant's utilization of 9-Box Assessment permitted decisionmakers who harbored discriminatory animus to infect the decision-making process.

215.    Defendant is liable for discrimination under a cat's pay theory because individuals harboring ageist animus influenced selection process for Team Leader positions.

216.    Defendant's decision to freeze Plaintiffs for 1 year for lateral moves and 3 months for job opportunities limited Plaintiffs' employment opportunities, including denying them training opportunities for career advancement.

217.    Defendant's justification for a 1year freeze on later months and a 3 month freeze for job opportunities is pretext for discriminatory animus.

218.    Defendant's violations of the ADEA were willful, knowing, and intentional.

219.    Each Plaintiff seeks non-discriminatory placement for elimination of Group Leader position, or the Team Leader Position denied.

220.    Each Plaintiff seeks recovery of past, present, and future pecuniary damages backpay (all forms of compensation and reflects fluctuations in working time, overtime rates, penalty overtime, Sunday premium and night work, changing rates of pay, transfers, promotions, and privileges of employment) from the date of the elimination of the GL position through the date of trial, including lost, retroactive tax-deferred contributions to their retirement account, a lump sum payment for back pay tax consequences, liquidated damages, restoration of leave.

221. Plaintiff seeks an award of front pay(all forms of compensation and reflects fluctuations in working time, overtime rates, penalty overtime, Sunday premium and night work, changing rates of pay, transfers, promotions, and privileges of employment) through the age of 71 years of age (or what the court or jury determines is appropriate) in the event reinstatement is not possible, and determination as prevailing party status and other forms of declaratory and equitable relief the court deems appropriate.

222. Plaintiff seeks an award of pre- and post- judgement interest.

223. Plaintiff seeks an award of attorney's fees and costs.

## DISPARATE TREATMENT IN VIOLATION OF 29 U.S.C. §623(B)

224. Plaintiffs re-allege and incorporate by reference paragraph nos. 1-223 with the same

225. Plaintiffs are all over the age of 60 years of age.

226. Defendant's policies, procedures and practices relating to the Reclassification of GLs limited, segregated, and classified Plaintiffs by eliminating their GL positions ("PEX positions").

227. Defendant's policies, procedures and practices relating to the Reclassification of GLs limited, segregated, and classified Plaintiffs by placing them in Production Expert positions ("PEX positions").

228. Defendant's policies, procedures and practices relating to the Reclassification of GLs limited, segregated, and classified Plaintiffs into PEX positions which "froze" them for 1year for lateral moves and 3 months for job opportunities.

229. Defendant's policies, procedures and practices deprived and tended to deprive Plaintiffs, and similarly situated individuals 60 years of age or more subject to GL reclassification and

PEX positions, of opportunities to transfer to other lines, different departments and/or different shifts that had for a Group Leader In Training or a Group Leader vacancy.

230.    Defendant's policies, procedures and practices deprived and tended to deprive Plaintiffs, and similarly situated individuals 60 years of age and subject to GL reclassification from opportunities to move vacancies for Group Leader-In Training positions.

231.    Defendant's policies, procedures and practices deprived and tended to deprive Plaintiffs, and similarly situated individuals 60 years of age or more subject to GL reclassification and moved into PEX positions, of opportunities to be moved into vacancies for Group Leader Positions.

232.    Defendant's violations of the ADEA willful, knowing, and intentional.

233.    Each Plaintiff seeks non-discriminatory placement for elimination of Group Leader position, or the Team Leader Position denied.

234.    Each Plaintiff seeks recovery of past, present, and future pecuniary damages backpay (all forms of compensation and reflects fluctuations in working time, overtime rates, penalty overtime, Sunday premium and night work, changing rates of pay, transfers, promotions, and privileges of employment) from the date of the elimination of the GL position through the date of trial, including lost, retroactive tax-deferred contributions to their retirement account, a lump sum payment for back pay tax consequences, liquidated damages, restoration of leave.

235.    Plaintiff seeks an award of front pay(all forms of compensation and reflects fluctuations in working time, overtime rates, penalty overtime, Sunday premium and night work, changing rates of pay, transfers, promotions, and privileges of employment)  through the age of 71 years of age (or what the court or jury determines is appropriate) in the event

reinstatement is not possible, and determination as prevailing party status and other forms of declaratory and equitable relief the court deems appropriate.

236. Plaintiff seeks an award of pre- and post- judgement interest.

237. Plaintiff seeks an award of attorney's fees and costs.

**PRAYER FOR RELIEF**

238. WHEREFORE, Plaintiffs respectfully prays that this Court will assume jurisdiction of this action and, after trial, provide the relief as follows:

    a. Non-discriminatory placement for elimination of Group Leader position or the Team Leader Position denied, or front pay until the age 71 in lieu of reinstatement;

    b. Issue an order requiring Defendant to make the Plaintiffs whole by awarding pecuniary compensatory damages available under the ADEA.

    c. Issue an order requiring Defendant to pay liquidated damages.

    d. Issue an order awarding Plaintiffs attorney's fees, costs and expenses under the ADEA.

    **e.** Plaintiff seeks an award of pre- and post- judgement interest.

    f. Such other and further relief as the Court may deem just and proper.

        PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE BY JURY

                  Respectfully  submitted,

                  Daniel Arciniegas TN Bar No. 35853
                  **ARCINIEGAS LAW**

1242 Old Hillsboro Road
The Atrium Building
Franklin, Tennessee 37069
Telephone: 629.777.5339
Fax: 615.988.9113
Daniel@AttorneyDaniel.com

***Attorney for Plaintiff***
***#MATTER.NAMED PLAINTIFF#***